Original
No. 92-764

# Petition of Gloria Walker
## (New Hampshire Division of Human Services)

May 16, 1994

*New Hampshire Legal Assistance*, of Portsmouth (*Victoria Pulos* on the brief and orally), for Gloria Walker.

*Jeffrey R. Howard*, attorney general (*Lucy C. Hodder*, attorney, on the brief and orally), for the State.

BROCK, C.J. The petitioner, Gloria Walker, seeks a writ of certiorari to the division of human services (division) for review of the denial of her application for benefits under Aid to Families with Dependent Children—Unemployed Parent (AFDC-UP) program. Walker challenges the division's reliance on decisions of the department of employment security (DES) denying unemployment compensation to her children's father as the basis for denying the family AFDC-UP benefits. We vacate the division's decision and remand for an independent determination by the division of the family's eligibility for AFDC-UP benefits.

Aid to Families with Dependent Children (AFDC) is a cooperative financial assistance program for needy families established by federal law and administered by the States through approved plans. 42 U.S.C.A. §§ 601, 602, 607 (1991 & Supp. 1993). AFDC-UP, which is part of the AFDC program, provides aid to children who are needy as a result of the unemployment of their family's principal earner. 42 U.S.C.A. § 607 (1991). The federal regulations implementing AFDC-UP allow States to choose a definition of unemployment from those provided. *Batterton v. Francis*, 432 U.S. 416, 429 (1977); 45 C.F.R. § 233.101(a)(1)(ii) (1992).

New Hampshire amended its AFDC statute in 1990 to include children who are needy due to the unemployment of a parent who is the principal wage earner. RSA 167:6, V (Supp. 1993). The division's administrative rule pertaining to AFDC-UP limits the definition of unemployed parent to one who is not or would not be "by reason of conduct or circumstances disqualified for unemployment compensation benefits under New Hampshire law." N.H. ADMIN. RULES, He-W 628.05(b). In addition, the division's policy manual directs that:

> "When [DES] has disqualified the [principal wage earner] from receiving [unemployment compensation] benefits for the following reason(s), the deprivation due to unemployment requirement is not met:
>
> . . .
>
> 2. Being discharged for misconduct associated with one's work . . . ."

N.H. DIV. HUMAN SERVICES, PUBLIC ASSISTANCE POLICY MANUAL, policy 2054.2 (1991) (PAPM). Therefore, to be eligible for AFDC-UP benefits, an applicant first must file for and receive unemployment compensation benefits, unless the applicant is not eligible for unemployment compensation benefits for specified reasons not applicable in this case. *See id.* at policy 2054.7; N.H. ADMIN. RULES, He-W 628.05(b). If an applicant is covered by a specified exception to the DES determination requirement, the division conducts its own hearing and makes an independent determination of the applicant's eligibility for AFDC-UP benefits. PAPM, *supra,* policy 2054.2(c).

In the present case, Gloria Walker and Robert Phillips are the parents of four minor children. After Phillips was discharged from his job at Cumberland Farms and denied unemployment benefits by DES, Walker applied for financial assistance for their family through the AFDC-UP program. The division denied the application based on the DES determination that Phillips was ineligible for unemployment compensation because he was discharged due to his misconduct at work. Phillips' appeal of the DES decision was unsuccessful. Walker reapplied for AFDC-UP benefits several months later and was again denied by the division. She appealed, challenging the division's reliance on the DES denial of unemployment compensation, but, following a hearing, the division issued a fair hearings decision affirming the denial of her AFDC-UP application.

██ The only judicial review of a fair hearings decision issued by the division is by petition for a writ of certiorari. *Wentworth-Douglass Hosp. v. N.H. Dept. of Health & Welfare,* 131 N.H. 364, 366, 553 A.2d 311, 312 (1988). Our review of an administrative agency's decision on a petition for certiorari is limited to ascertaining whether the "agency has acted illegally in respect to jurisdiction, authority or observance of the law . . . or has abused its discretion or acted arbitrarily, unreasonably or capriciously." *Petition of Pelletier,* 125 N.H. 565, 569, 484 A.2d 1119, 1121 (1984) (quotations and citation omitted). In her petition for certiorari, Walker contends that the division violated RSA 282-A:180 (Supp. 1993) by admitting into evidence and relying on DES decisions denying Phillips eligibility for unemployment compensation to determine the family's ineligibility for AFDC-UP benefits. RSA 282-A:180 provides as follows:

> "Decisions rendered under this chapter shall not be admissible in any court or in administrative or other proceedings, not under or pursuant to this chapter, for the purpose of barring such court or proceeding from making independent

findings of fact and rulings of law under the doctrine of collateral estoppel."

The division responds that its actions are authorized by federal law and do not conflict with RSA 282-A:180.

■■ First, there is no question that federal law allows New Hampshire to choose the definition of unemployment that it has adopted. *See Batterton*, 432 U.S. at 429; 45 C.F.R. § 233.101(a)(1)(ii). "The States were given broad power to define 'unemployment' for purposes of the [AFDC-UP] program and to determine the relationship of this new program to existing state unemployment compensation plans." *Batterton*, 432 U.S. at 419. In considering potential conflict between federal AFDC provisions and state law, courts should allow federal-state cooperation, rather than impose federal preemption, unless the conflict is substantive and violates a specific provision of the federal AFDC law. *See New York Dept. of Social Services v. Dublino*, 413 U.S. 405, 423 n.29 (1973); *see also In re Alien Children Ed. Litigation*, 501 F. Supp. 544, 588 (S.D. Texas 1980). Neither federal regulation pertaining to AFDC-UP nor the New Hampshire AFDC-UP statute, RSA 167:6, V, requires that the division use DES decisions to determine eligibility for AFDC-UP, instead of determining eligibility independently, as the division does when no DES decision is available. Because the division's policy to rely on DES decisions is not mandated by federal or State law, we find no conflict between RSA 282-A:180, as interpreted by the petitioner, and AFDC-UP legislation.

■■ We next address whether the division's use of DES decisions to determine eligibility for AFDC-UP benefits violates RSA 282-A:180. The interpretation of a statute is to be decided ultimately by this court. *Pope v. Town of Hinsdale*, 137 N.H. 233, 237, 624 A.2d 1360, 1362 (1993). We begin by examining the plain language of the statute using the ordinary meanings of the words to determine legislative intent. *Great Lakes Aircraft Co. v. City of Claremont*, 135 N.H. 270, 277, 608 A.2d 840, 845 (1992). While legislative history may be helpful in the interpretation of an ambiguous statute, it will not be consulted when the statutory language is plain. *Chroniak v. Golden Investments Corp.*, 133 N.H. 346, 351, 577 A.2d 1209, 1213 (1990). We interpret legislative intent from the statute as written, and therefore, we will not consider what the legislature might have said or add words that the legislature did not include. *Appeal of Astro Spectacular, Inc.*, 138 N.H. 298, 300, 639 A.2d 249, 250 (1994).

The DES decisions at issue in this case were rendered by the department pursuant to RSA 282-A:32, I(b) (1987), and held that Phil-

lips was not qualified for unemployment compensation due to misconduct connected with his work. The dispute between the petitioner and the division focuses on the legislative intent of the language barring the admissibility of DES decisions in other proceedings for purposes of invoking collateral estoppel. Walker argues that the statute explicitly bars the division's reliance on DES decisions to determine eligibility for AFDC-UP benefits. The division contends that the statute allows the division to make an independent determination of eligibility, but does not require that it do so.

Our interpretation of the statute turns on the meaning of "the doctrine of collateral estoppel." "[T]he doctrine of collateral estoppel bars a party to a prior action, or a person in privity with such a party, from relitigating any issue or fact actually litigated and determined in the prior action." *Daigle v. City of Portsmouth*, 129 N.H. 561, 570, 534 A.2d 689, 693 (1987). Because the doctrine of collateral estoppel operates to preclude a *party* from relitigating an issue previously decided, the effect of the statute's prohibition against employing collateral estoppel is to allow *parties* to relitigate issues that have been previously decided by the DES. Although the statute does not require that non-DES proceedings make independent determinations, it prohibits the use of DES decisions to bar relitigation of issues decided by the DES. Therefore, the statute does not permit a non-DES proceeding to admit DES decisions into evidence in lieu of making an independent determination of fact or law.

We are not persuaded by the division's arguments that the legislative history of RSA 282-A:180 suggests a different legislative intent. If the legislature intended that the statutory prohibition against using DES decisions should apply only to particular proceedings or should not apply to determinations of eligibility for other benefits such as AFDC-UP, those limitations could have been expressed in the statute. We will not interpret the statute to limit its application, as urged by the division, because we "can neither ignore the plain language of the legislation nor add words which the lawmakers did not see fit to include." *Astro Spectacular*, 138 N.H. at 300, 639 A.2d at 250 (citation and quotations omitted).

The division's fair hearings decision, issued November 25, 1992, explained that Walker's application for AFDC-UP benefits was dependent upon Phillips' application for unemployment compensation benefits. Further, her application for AFDC-UP benefits and her appeal were both denied based on the division's policy that an applicant

is not eligible for AFDC-UP benefits if the family's principal wage earner has been denied unemployment compensation by the DES due to misconduct associated with his work. The hearings officer included the following conclusion of law in his fair hearings decision: "In this instance, the policy is specific. It provides that decisions made by DES involving misconduct are to be accepted by the Division when making eligibility determinations in the AFDC-UP program."

■ We hold that the division's reliance on DES decisions to determine issues necessary to evaluate the eligibility of applicants for AFDC-UP benefits violates RSA 282-A:180. Pursuant to RSA 282-A:180, DES decisions also are not admissible in division proceedings to bar an independent determination of fact or law by the hearings officer. Therefore, the division has acted illegally in denying Walker's application for AFDC-UP based upon DES decisions determining Phillips' disqualification for unemployment compensation. We vacate the division's fair hearings decision and remand this case for further proceedings consistent with this opinion.

*Vacated and remanded.*

All concurred.