Merrimack
No. 98-140

LONGCHAMPS ELECTRIC, INC.

v.

NEW HAMPSHIRE STATE APPRENTICESHIP COUNCIL

December 14, 2000

*Sheehan, Phinney, Bass & Green, P.A.*, of Manchester (*Edward A. Haffer* on the brief and orally), for the plaintiff.

*Philip T. McLaughlin*, attorney general (*Douglas N. Jones*, assistant attorney general, on the brief and orally), for the defendant.

DALIANIS, J. The plaintiff, Longchamps Electric, Inc., appeals the decision of the Superior Court (*McGuire*, J.) denying its summary judgment motion and granting the defendant's summary judgment motion. We reverse.

The defendant, New Hampshire State Apprenticeship Council (council), regulates and establishes standards for apprenticeship programs in various trades and industries. *See* RSA 278:3 (1999). The council's rules specify the number of apprentices an employer may employ. This number differs with the size of the employer's journeyman workforce. *See* N.H. ADMIN. RULES, App 303.03(a) (effective October 29, 1996). For example, an employer with one journeyman is permitted one apprentice, while an employer with between eight and ten journeymen is permitted six apprentices. *See id.*

The council's rules also specify hiring ratios, requiring that employers hire a certain number of journeymen before they may hire an additional apprentice. *See id.* Employers with between one and four journeymen need only hire one additional journeyman before they may add an apprentice, a 1:1 hiring ratio. *See id.* Employers, like the plaintiff, with seventeen journeymen must hire five additional journeymen before they may add an apprentice, a 5:1 hiring ratio. *See id.*

The council's rules permit employers to seek a waiver from these ratios. *See* N.H. ADMIN. RULES, App 303.03(b), (c) (effective October 29, 1996). The rules also exempt employers with collective bargaining agreements that specify a different hiring ratio than the rules require. *See* N.H. ADMIN. RULES, App 303.03(b).

In 1996, the council threatened to cancel the plaintiff's apprenticeship program if it did not bring its ratio into compliance with the rules. In response, the plaintiff sought a waiver from the council's

5:1 hiring ratio, requesting that it be permitted to hire one apprentice for every journeyman. After a hearing, the council denied the waiver request and set a hearing for a later date on whether to cancel the plaintiff's apprenticeship program.

The plaintiff filed petitions for certiorari and injunctive relief in superior court. The court remanded the case to the council for further hearing on the plaintiff's waiver request and ordered the council to allow the plaintiff "a 3-1 journeyman to apprentice ratio beginning with the seventeenth journeyman."

Following the hearing, the council again denied the plaintiff's request that it be permitted to have a 1:1 journeyman to apprentice hiring ratio. The council, however, permitted the plaintiff to have a 1:1 journeyman to apprentice hiring ratio for the first five journeymen, and thereafter to operate with a 3:1 hiring ratio for a period of one year. The plaintiff requested that the superior court review this decision. The parties filed cross-motions for summary judgment. The trial court denied the plaintiff's motion and granted the council's motion, and this appeal followed.

The plaintiff argues that the court erred when it upheld the council's hiring ratios. The plaintiff asserts, first, that the council's hiring ratios violate the fundamental purpose of its enabling statute, RSA chapter 278. The plaintiff contends that by adopting and enforcing the hiring ratios, the council has acted outside of its delegated authority. We disagree.

"On questions of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *State v. Farrow*, 140 N.H. 473, 474, 667 A.2d 1029, 1031 (1995) (quotation omitted). "We begin by examining the plain language of the statute using the ordinary meanings of the words to determine legislative intent." *Petition of Walker*, 138 N.H. 471, 474, 641 A.2d 1021, 1024 (1994).

At the outset, we recognize that the legislature amended RSA chapter 278 in 1999 and that the council has since eliminated the 5:1 hiring ratio for employers with seventeen or more journeymen. *See* Laws 1999, 268:1; N.H. ADMIN. RULES, App 303.03(a) (amended September 18, 1999). These employers may now operate with a 3:1 hiring ratio. *See* N.H. ADMIN. RULES, App 303.03(a) (amended September 18, 1999). This opinion focuses upon the rules in effect when the dispute between the parties arose.

RSA 278:1 provides that the purposes of chapter 278 are, in pertinent part:

> I. To encourage employers, associations of employers and organizations of employees to voluntarily establish appren-

ticeship programs and the making of apprenticeship agreements;

II. To create opportunities for young people to obtain employment and adequate training in trades and industry with parallel instructions in related and supplementary education under conditions that will equip them for profitable employment and citizenship . . . .

To effectuate these purposes, the legislature has delegated to the council the authority to "establish, maintain, and approve consistent standards for on-the-job training programs to be coordinated with related course instruction and included in apprenticeship programs"; "[s]upervise the . . . maintenance of standards"; and "[r]egister apprenticeship programs . . . which incorporate [the council's ] standards . . . or terminate or cancel the registration of apprenticeship programs . . . when [they] fail to meet or maintain said registration qualifications[.]" RSA 278:3 (1999). The legislature has also required that all apprenticeship agreements meet minimum standards that must include "[a] statement as to the ratio of apprentices to journeymen." RSA 278:8, IX (1999).

■ Thus, the enabling statute requires the council to develop and enforce apprenticeship program standards and requires that these standards include ratios. Moreover, the council's rules on ratios state that their purpose is to "promote proper supervision, training, safety, and reasonable continuity of employment of the apprentices." N.H. ADMIN. RULES, App 303.02(h) (effective October 29, 1996). These purposes are consistent with RSA chapter 278. We therefore agree with the trial court that the council has not exceeded its delegated legislative authority by developing and enforcing hiring ratios and that these ratios do not violate RSA chapter 278.

■ The plaintiff next contends that the council's ratios violate RSA 319-C:2, IV (1996). RSA chapter 319-C regulates the licensing of electricians. The definition of journeyman electrician in RSA 319-C:2, IV states that each journeyman electrician "may have one apprentice electrician working with him and under his personal supervision." The plaintiff argues that RSA 319-C:2, IV prohibits the council from adopting any ratio that would require a journeyman to have more than one apprentice electrician working with him. We disagree. Nothing in the council's hiring ratios either requires a journeyman to supervise more than one apprentice or prohibits him

or her from doing so. Thus, we hold that RSA chapter 319-C and the council's hiring ratios do not conflict.

The plaintiff next argues that the council's hiring ratios violate the Equal Protection Clauses of the State and Federal Constitutions. We agree.

■ We first address the plaintiff's equal protection arguments under our State Constitution, *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350-51 (1983), and "because the Federal Constitution offers no greater protection under its equal protection provisions," we do not undertake a separate federal analysis. *Petition of Abbott,* 139 N.H. 412, 417, 653 A.2d 1113, 1117 (1995).

"The first question in an equal protection analysis is whether the State action in question treats similarly situated persons differently." *Id.* (quotation omitted). The council's hiring ratios distinguish between employers of different sizes. The smaller the employer, the more generous the hiring ratio. An employer with one to four journeymen need only hire one additional journeyman before it may add an apprentice while an employer with seventeen journeymen must hire five additional journeymen before it may add an apprentice. The issue is whether this difference in treatment is constitutionally permissible. *See id.* at 418, 653 A.2d at 1117.

The plaintiff concedes that the rational basis test applies to this classification. Under this test, the classification is sustainable if it is "rationally related" to a legitimate state interest. *See Baxter Int'l v. State,* 140 N.H. 214, 217, 665 A.2d 350, 353 (1995) (quotation omitted). The stated purpose of the council's ratios is to "promote proper supervision, training, safety, and reasonable continuity of employment of the apprentices." N.H. ADMIN. RULES, App 303.02(h). The differences in hiring ratios bear no rational relationship to this purpose. As the plaintiff notes, "[i]f a smaller employer can give proper supervision and training with a 1:1 [hiring] ratio, there is no reason . . . why a larger employer cannot do the same."

■ The council argues that its hiring ratios "limit[] the total number of apprentices in a skilled trade while providing smaller, as well as larger, employers with a fair opportunity to hire apprentices." Limiting the total number of apprentices, however, fulfills neither the stated purpose of the hiring ratios nor one of the purposes of the enabling statute: to create apprenticeship opportunities. *See* RSA 278:1, II. Moreover, there is no rational basis for limiting apprenticeship opportunities with larger employers more strictly than with smaller employers.

The council asserts that any differences in its treatment of employers based upon size reflects factual differences between employers of different sizes and, thus, is permissible. The council notes that "[s]maller employers handle *only* smaller jobs" and "[l]arger jobs are handled only by larger employers." The council further contends that "larger employers are likely to have a greater effect on the level of apprentice and journeyman wages than smaller employers." We are not persuaded that these differences justify a difference in hiring ratios. *See Belkner v. Preston*, 115 N.H. 15, 19, 332 A.2d 168, 172 (1975).

The "greater effect" that larger employers may have upon apprentice and journeyman wages is not rationally related to the purpose of the ratios. Moreover, hiring ratios that more severely restrict the ability of larger employers to hire apprentices bear no rational relationship to the purpose of the ratios. If, as the council contends, larger employers work on both large and small jobs, while smaller employers work on only small jobs, then restricting apprenticeship opportunities with larger employers defeats the training purpose of the ratios. We hold, therefore, that the council's hiring ratios violate the State Constitution's equal protection guarantee.

In light of our ruling, we need not reach the plaintiff's assertion that the council's hiring ratios violate the fair competition provision of the State Constitution. *See* N.H. CONST. pt. II, art. 83.

*Reversed.*

JOHNSON, J., sat for oral argument but retired prior to the final vote; THAYER, J., sat for oral argument but resigned prior to the final vote; BROCK, C.J., and BRODERICK and NADEAU, JJ., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred; NADEAU and DALIANIS, JJ., took part in the final vote by consent of the parties.