Caouette v. OfficeMax                    CV-03-251-JD  01/21/05  P

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


<u>Wilfred G. Caouette</u>

     v.                                 Civil No. 03-251-JD
                                        Opinion No. 2005 DNH 008
<u>OfficeMax, Inc.</u>


                         O R D E R


     Wilfred G. Caouette, proceeding pro se, and OfficeMax, Inc.,

have cross-moved for summary judgment on Caouette's claim against

the company for age discrimination in violation of the Age

Discrimination in Employment Act, 29 U.S.C. § 621 <u>et seq.</u> (the

"ADEA").  OfficeMax has also moved for summary judgment on

Caouette's claims for wrongful discharge, defamation, libel, and

slander under New Hampshire law.  Each side has objected to the

other's motion.[1]  The court will treat Caouette's request for

other "relief" in his motion as seeking to compel OfficeMax to

answer certain interrogatories, to strike certain portions of his

deposition transcript, and for sanctions.  OfficeMax has filed a

separate objection to any such relief.

_____

     [1]Caouette, in fact, has filed two separate objections to
OfficeMax's motion, one on November 19, 2004, and the other on
December 9, 2004.  The court has considered both.

I.    The "Motion for Relief"

Because Caouette's motion seeks relief that, if granted, could potentially shape the universe of facts on which the summary judgment motions will be decided, the court will address that matter first.  Caouette complains that OfficeMax has refused to answer some of his interrogatories without adequate justification.  His motion fails to state, however, which interrogatories are at issue, simply attaching OfficeMax's supplemental responses to interrogatories 3 and 4.  Those responses object to the interrogatories as, inter alia, "overly broad in scope and time," but nevertheless provide information covering a more limited time period than that asked about.

The party seeking information in discovery over an adversary's objection has the burden of showing its relevance. See, e.g., Whittingham v. Amherst Coll., 164 F.R.D. 124, 127 (D. Mass. 1995); Gagne v. Reddy, 104 F.R.D. 454, 456 (D. Mass. 1984). Beyond Caouette's charge that full answers to the interrogatories "would provide the needed evidence or proof of wrongdoing," he offers no explanation how the data he seeks but has not received bears any relevance to this matter.  His "motion for relief" is denied to the extent it seeks to compel interrogatory answers.

Caouette also contends that his deposition testimony regarding complaints of sexual harassment against him submitted

2

to OfficeMax should be stricken because the New Hampshire Department of Employment Security ("DES") reportedly "deemed no misconduct" in deciding to award him unemployment benefits following his termination by OfficeMax. This argument rests on an incorrect premise. The department's decisions are not "admissible in any court . . . for the purpose of barring such court . . . from making independent findings of facts and rulings of law under the doctrine of collateral estoppel." N.H. Rev. Stat. Ann. ("RSA") § 282-A:180; see also In re Walker, 138 N.H. 471, 475 (1994) ("the statute does not permit a non-DES proceeding to admit DES decisions into evidence in lieu of making an independent determination of fact or law"). Thus, whatever the DES found with regard to Caouette's termination from OfficeMax has no bearing on this case and therefore provides no basis for striking his deposition testimony on that subject.

Finally, Caouette requests "Court Discipline" against one of OfficeMax's lawyers for asking to reschedule Caouette's deposition following the unexpected hospitalization of the lawyer's wife for five days. When the lawyer explained this situation to Caouette, he responded in writing, "It is too bad about your wife, but it is not my concern . . . . So stop your griping and get it over with." Nevertheless, Caouette also agreed to the postponement of his deposition until July 30, 2004,

when it did in fact take place. It is apparent to the court that no sanctions against OfficeMax's lawyer are appropriate.

II. The Summary Judgment Motions

A. Standard of Review

On a motion for summary judgment, the moving party has the burden of showing the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant does so, the court must then determine whether the non-moving party has demonstrated a triable issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). In performing this analysis, the court must view the entire record in the light most favorable to the non-movant, "'indulging all reasonable inferences in that party's favor.'" Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). Still, "[o]n issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion." Id., 950 F.2d at 822; see also Invest Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d 57, 76 (1st Cir. 2001). Where, as here, both sides have moved for summary judgment, the court applies this analysis to each motion in turn. See Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996).

4

B.    Background Facts

Local Rule 7.2 requires that a memorandum submitted in support or in opposition to a motion for summary judgment "incorporate a short and concise statement of material facts, supported by appropriate record citations," as to which the party contends there is or is not a genuine issue to be tried, as the case may be.  Neither Caouette's memorandum in support of his motion for summary judgment, nor his response to OfficeMax's motion, complies with this mandate.  Instead, these filings consist almost entirely of unverified statements, made without any reference to record documents or other admissible evidence.  For purposes of OfficeMax's motion for summary judgment, then, all of the properly supported material facts it has set forth in its statement are deemed admitted.  See L.R. 7.1(b)(2).

In September, 1993, OfficeMax hired Caouette to work as a salesperson in its store in Nashua, New Hampshire.  The store sells office supplies and furniture, as well as computers, software, and other business electronics.  Caouette holds an undergraduate degree in accounting, a master's degree in psychology, and the equivalent of a master's in business administration.  Prior to joining OfficeMax, he had worked as the comptroller of a non-profit corporation, a business consultant, and an adjunct college professor.

Caouette acknowledges that "the one issue that seems to have plagued [his] employment [with OfficeMax] was problems with customers." Caouette Dep. at 217. In fact, beginning in July, 1997, he received a number of written warnings arising out of his interactions with OfficeMax patrons and, in one instance, other employees. Nevertheless, OfficeMax promoted Caouette to the position of supervisor of the electronics department in the Nashua store in 1998.

Caouette's 1999 performance review noted that Caouette had "a desire to share personal issues with staff and customers. More proffesional [sic] conduct is needed." Id. at 40, Ex. 1. While the review also stated that Caouette had "made good progress interacting with customers," it added that "continued effort [was] needed." Id. Caouette's 1999 "Developmental Plan" noted that "[e]ffective immediately, [his] interaction with staff, peers and supervisors should be focused on professionalism." Id. at 68, Ex. 3.

In 2001, Caouette began communicating with OfficeMax's regional human resources manager, Mary Ryan, about his future with the company. With the support of Thomas Huther, his store manager, Caouette was recommended for a management training program, which he apparently completed. Caouette told Ryan in an e-mail of July 22, 2001, however, "I am willing to take a store

management position as a stop gap measure, but it is not where I want to be. I HATE SALES. I HATE DEALING WITH IDIOTS FOR CUSTOMERS . . . ." Id. at 85, Ex. 6. Earlier that year, Caouette had received another warning for rudeness to a customer and a relatively poor rating on his "Performance Appraisal Form."

In May 2002, a male co-worker, Karanja Durham, filed a sexual harassment complaint against Caouette. The OfficeMax "Associates Handbook" requires employees to bring occurrences of sexual harassment to the attention of management. Durham alleged that Caouette had approached him and claimed to be a hermaphrodite with functioning female reproductive organs. Durham responded by walking away from Caouette, who nevertheless approached him ten minutes later to continue the discussion. Durham also related an earlier conversation in which Caouette had said "that he had special things about him including the fact that he has female parts [and] hormones." Caouette Dep. at 233, Ex. 17. In his deposition, Caouette admitted making comments of this nature in front of Durham, but claimed that other employees present at the time had instigated the discussion.

In or around June 2002, OfficeMax promoted James Savarese to the position of "key carrying supervisor" of the Nashua location, a management-level position with duties that include opening and closing the store and acting as manager in the absence of any

7

other managers. According to Caouette, Savarese was thirty-nine years old at the time and had been the supervisor of the furniture department of the Nashua store since approximately October 2001. Caouette, in contrast, was forty-nine at the time. Unlike Caouette, Savarese had never completed the management training program, but also did not have a history of poor customer service or customer complaints. Due to his historically poor performance in those areas, Caouette was not qualified for the promotion, according to Ryan. Huther attests that Caouette's age played no role in the decision not to promote him to the "key carrier" position.

Huther received two other sexual harassment complaints against Caouette in October 2002. In the first of them, a female cashier, Deanna Miller, alleged that Caouette responded to a question about his stated intention to dress as a woman for Halloween by saying that he was a hermaphrodite who menstruated and used to wear a bra. Caouette later wrote a letter to Huther claiming not to remember anything about the day in question due to medication he was taking for double pneumonia. Caouette also wrote that the complaint had arisen because Miller had "agreed not to say anything with the answers to her inappropriate questions and has broken her word . . . . Deanna is taking advantage of someone who is on heavy medication and has not the

full capacity to completely understand what is being asked." Id. at 276-77, Ex. 27. In his deposition, Caouette denied making any of the statements Miller had found offensive, but also admitted writing the letter "to come up with an excuse for the fact that [he] had had that discussion with [her]." Id. at 284.

The second complaint came from another female cashier, Nicole Kelly, who claimed to have been talking about "a boy at school [she] liked" with Caouette when he mentioned that he had a female friend who regularly called him to engage in sex and asked Kelly whether she, too, wanted to have sex with him. Caouette Dep. at 267, Ex. 26. Caouette testified in his deposition that he had told Kelly that he had a friend with whom he was intimate but denied having asked Kelly for sex.

Huther investigated the cashiers' complaints and forwarded the results on to the territorial human resources department, which recommended that Caouette receive a "Second Step Written Corrective Action" for his violations of company harassment policy.[2] As a result, Huther explained in a written memorandum to Caouette, he would be immediately terminated for "[a]ny further inappropriate actions" and had to restrict his further conversations with the complaining cashiers to "issues of

_____

[2]Caouette had received a "First Step Written Corrective Action" following Huther's investigation of Durham's complaint.

9

business." Id. at 301-302, Ex. 31. The document, dated November 29, 2002, also admonished that "no form or appearance of any type of retaliation will be tolerated" and that all information pertaining to the investigation had to remain confidential. Id.

Huther later received word from his assistant manager that Caouette had nevertheless engaged in discussions of the investigation with fellow employees, including a retaliatory comment he had made to one of the complainants. As part of the subsequent investigation, another employee, Jason Panagiotes, related a recent conversation with Caouette in which he had accused the complainants of fabricating the charges. Miller also submitted a statement that Caouette had approached her and said, "[I]t is great to be accused of something I did not do." Huther Aff. ¶ 17, Ex. 10. In his deposition, Caouette acknowledged telling Panagiotes that co-workers had been "spreading rumors . . . and making up stories" but denied that this was a reference to the sexual harassment complaints. Caouette Dep. at 316. Caouette also admitted that Miller heard him make the statement in question but insisted that he had not been talking to her, only to himself as he walked away from her. Based on the results of Huther's investigation, Caouette was terminated on January 2, 2003, for continued violation of OfficeMax policies. Huther attests that Caouette's age played no role in this decision.

Caouette promptly filed a charge of age discrimination against OfficeMax with the New Hampshire Commission for Human Rights. The Equal Employment Opportunity Commission dismissed the complaint and issued a right-to-sue letter. Caouette then filed a pro se complaint against OfficeMax in this court, asserting claims under the ADEA as well as Title VII of the Civil Rights Act of 1964, the Privacy Act of 1974, and state law, and seeking to proceed in forma pauperis. After reviewing the complaint pursuant to 28 U.S.C. § 1915, the magistrate recommended dismissal of all of the claims except those asserting that OfficeMax (1) violated the ADEA and its state-law analog, RSA 354-A:7, by not promoting Caouette to key-carrying supervisor and later terminating him, and (2) defamed, libeled, and slandered him by wrongfully accusing him of sexual harassment and retaliation and disclosing these accusations to other employees. The court approved the magistrate's recommendation without objection by either party.

C.    Discussion

    1.    The Age Discrimination Claims

Caouette acknowledges in his first objection to OfficeMax's motion for summary judgment that "[i]t is true [he] was not terminated due to age discrimination . . . ." Objs. & Resp. to

11

Def. Mot. for Summ. Judg. at 10. He also testified in his deposition that he does not believe he was fired on account of his age. Chouette Dep. at 119. Through these admissions, Caouette has waived any claim he intended to assert that his firing constituted discrimination in violation of either the ADEA or RSA 354-A:7. See Cerqueira v. Cerqueira, 828 F.2d 863, 865 (1st Cir. 1987); 11 James Wm. Moore et al., Moore's Federal Practice § 56.14[2][d][iii], at 56-194 (3d ed. 2004).

Caouette continues to claim, however, that OfficeMax illegally discriminated against him in failing to promote him to key-carrying supervisor. To make out a prima facie case, Caouette must show that (1) he was at least forty years old at the time, (2) he was qualified for the position, (3) he was denied the position, and (4) OfficeMax filled the position with a younger person with qualifications similar to Caouette's. Mesnick, 950 F.2d at 823; see also Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004) (setting forth standard in Title VII context). If Caouette's claim passes this test, the burden shifts to OfficeMax to articulate a legitimate, non-discriminatory reason for its decision. Currier v. United Techs. Corp., ___ F.3d ___, 2004 WL 2955259, at *6 (1st Cir. Dec. 22, 2004); Rivera-Aponte v. Rest. Metropol #3, Inc., 338 F.3d 9, 11 (1st Cir. 2003). This, in turn, has the effect of shifting

12

the burden back to Caouette to show that the stated reason actually serves as a pretext for age discrimination. Currier, 2004 WL 2955259, at *6; Rivera-Aponte, 338 F.3d at 11.

OfficeMax argues for summary judgment in the first instance based on Caouette's lack of evidence that he was qualified for the position of key-carrying supervisor in 2002. Relatedly, OfficeMax contends that Caouette has failed to show pretext in its stated reason for not promoting him, i.e., his "pattern of poor performance and that [Savarese] was better qualified." Mem. Supp. Mot. Summ. Judg. at 17. Many courts have eschewed this kind of two-tiered argument in favor of a single inquiry into the plaintiff's evidence that his alleged lack of qualifications is a pretext for unlawful discrimination. 1 Barbara Lindeman & Paul Grossman, Employment Discrimination Law at 587 & n. 246 (3d ed. 1996); accord Rathbun, 361 F.3d at 74 (assuming proof of prima facie case and proceeding to consideration of evidence of pretext). The court will follow that approach here.

A plaintiff can prove pretext in a variety of ways. E.g., Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000). One way consists of "showing that the employer's proffered explanation is unworthy of credence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (internal quotation marks and citation omitted); see also

13

Chungchi Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 39 (1st Cir. 2003).  Caouette takes this approach in the first of his objections, arguing that the customer complaints against him resulted from inadequate staffing, his poor evaluations were unwarranted or motivated by biases against him unrelated to his age, his average daily sales exceeded those of his co-workers, and a number of customers apparently thought so much of his abilities as a salesperson that they dealt only with him.[3]

As OfficeMax points out in its reply, Caouette fails to support any of these allegations with references to admissible evidence.  A party opposing summary judgment "may not rest upon mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see also Lewis v. City of Boston, 321 F.3d 207, 215 n.7 (1st Cir. 2003) (admonishing that "factual assertions made in briefs and other self-serving documents that are not otherwise supported by competent evidence" are disregarded in ruling on summary judgment).  Caouette's arguments that his performance was not in fact poor are therefore

---

[3]Relatedly, Caouette asserts in his own motion for summary judgment that OfficeMax "used Secret Shoppers (difficult customers) in an attempt to discredit" his abilities as a salesperson.

insufficient to avoid summary judgment.[4]  See Mesnick, 950 F.2d at 824 ("It is not enough for a plaintiff merely to impugn the veracity of the employer's justification: he must elucidate specific facts which would enable a [factfinder] to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination.") (internal quotation marks omitted).

Even taken at face value, however, the assertions in Caouette's objection do not establish a genuine issue as to whether OfficeMax's stated reason for not promoting him amounts to pretext for age discrimination.  Caouette essentially argues that OfficeMax passed him over for the promotion based on an unfairly developed view of him as a problematic employee.  As the First Circuit has repeatedly explained, "[t]he ADEA does not stop a company from [not promoting] an employee for any reason (fair or unfair) or for no reason, so long as the decision . . . does

_____

[4]In his second objection to the summary judgment motion, Caouette complains that he cannot procure affidavits from any OfficeMax employees who might support his claim because the company has instructed them not to talk to him.  Caouette, however, could have issued deposition notices for these employees but apparently chose not to do so.  He also could have attempted to procure affidavits from the customers who thought him a capable salesperson.  Indeed, Caouette claims in his first objection to have met some of these customers in public following his termination.  In short, Caouette bears complete responsibility for his failure to marshal any evidence to support his age discrimination claim.

not stem from the person's age." Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 337 (1st Cir. 1997) (internal quotation marks omitted); see also Rodriquez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 22-23 (1st Cir. 1999) (treating fact that employer's "evaluation process may not have treated [plaintiff] fairly" as insufficient evidence that "evaluation was a pretext for unlawful discrimination"); Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1118 n.4 (1st Cir. 1991) ("a mere showing that the employer's articulated reason may shield another (possibly nondiscriminatory) reason does not create a dispute of material fact sufficient to withstand summary judgment") (internal quotation marks omitted). Thus, whether or not OfficeMax's assessment of Caouette as an employee was valid, his age discrimination claim fails due to a lack of evidence that his age, rather than the negative assessment, motivated the company's failure to promote him. Mesnick, 950 F.2d at 824.

Together with his own motion for summary judgment, Caouette submits a chart received from OfficeMax showing that everyone who made supervisor in the Nashua store within the two years preceding Savarese's promotion, and the vast majority of those who made manager or assistant manager in the district in the preceding three years, was younger at the time of the action than Caouette was when he was passed over. Caouette argues that this

16

history constitutes "direct proof of age discrimination."

The court disagrees. The chart fails to indicate whether anybody else who may have been considered for each position was older or younger than the person actually hired or promoted, and the ages of those hired or promoted vary considerably, from twenty at one extreme to fifty-three at the other. Moreover, other than the length of time between each of the promotions and the initial hiring of the employee in question, the chart gives no clue as to the relative qualifications of any of them. The chart therefore shows no disparate treatment by OfficeMax in its hiring or promotion practices, on the basis of age, to which Caouette could have fallen victim. See Hillstrom v. Best W. TLC Hotel, 354 F.3d 27, 32 (1st Cir. 2003) (affirming summary judgment for employer on ADEA claim despite proof that three-quarters of employees terminated by supervisor were over forty due to lack of "evidence of the characteristics of the universe of employees supervised").

Caouette has failed to come forward with any evidence that OfficeMax's stated reason for failing to promote him actually served as pretext for age discrimination.[5] Accordingly, summary

_____

[5]Although Caouette does not make the argument in any of his summary judgment papers, he noted in his deposition that he thought himself better qualified than Savarese because Caouette had completed the management training course, while Savarese had

17

judgment for OfficeMax on Caouette's ADEA claim is appropriate. Because such proof is also essential to Caouette's claim of age discrimination in violation of New Hampshire law, see Scarborough v. Arnold, 117 N.H. 803, 808 (1977), summary judgment will enter for OfficeMax on this claim as well.[6]

### 2.    The Defamation, Libel, and Slander Claims

In his deposition, Caouette identified Durham, Miller, Kelly, and Panagiotes as the only OfficeMax employees who had defamed him and conceded that he had not been defamed by any OfficeMax manager. Caouette also testified that, to his knowledge, all of the allegedly tortious utterances occurred during the course of the sexual harassment investigations and were not published to anyone outside of the company.

"To establish defamation, there must be evidence that a defendant failed to exercise reasonable care in publishing,

---

not. However, "proof of competing qualifications will seldom, in and of itself, be sufficient to create a triable issue of pretext." Rathbun, 361 F.3d at 74. That is the case here, where Caouette has failed to come forward with any other evidence of the relative qualifications of him and Savarese, or, more importantly, to dispute OfficeMax's assertions that Savarese lacked Caouette's history of poor performance.

[6]Caouette argues in his objection that his state-law claim for wrongful discharge actually rests on the decision of the DES to award him unemployment benefits. As previously discussed, however, that decision has no relevance to this lawsuit.

without a valid privilege, a false and defamatory statement of fact about the plaintiff to a third party." Indep. Mech. Contractors, Inc. v. Gordon T. Burke & Sons, Inc., 138 N.H. 110, 118 (1993). OfficeMax moves for summary judgment on three separate grounds: (1) the complained-of statements were not false, but "substantially true," (2) to the extent any of the statements were false, they were made outside the scope of the speakers' employment with the company, and (3) the statements were privileged as reports of perceived sexual harassment or retaliation. Caouette addresses only the second of these arguments in his objections.

New Hampshire recognizes a qualified privilege for otherwise defamatory statements "'if the facts, although untrue, were published on a lawful occasion, in good faith, for a justifiable purpose, and with a belief, founded on reasonable grounds of its truth,' provided that the statements are not made with actual malice." Simpkins v. Snow, 139 N.H. 735, 740 (1995) (quoting Chagnon v. Union-Leader Corp., 103 N.H. 426, 437 (1961)). In Jones v. Walsh, 107 N.H. 379 (1966), the New Hampshire Supreme Court noted the applicability of such a privilege "'when the circumstances induce a correct or reasonable belief that (a) facts exist which affect a sufficiently important interest of the publisher, and (b) the recipient's knowledge of the defamatory

matter will be of service in the lawful protection of the interest,'" provided the recipient has a social or legal duty which is likely to prove useful in protecting the interest. <u>Id.</u> at 381 (quoting <u>Restatement of Torts</u> § 594 (1934)); <u>see also</u> <u>Supry v. Bolduc</u>, 112 N.H. 274, 276-77 (1972) (recognizing privilege for adjoining landowner's defamatory statements about plaintiff to zoning board given landowner's "private interest in the protection of her property to advance").

A number of courts have recognized a similar privilege that shields employees' reports to management of sexual harassment by their co-workers, given the complaining employees' interest in preventing further abuse and the employer's responsibility under federal law to do the same. <u>See</u>, <u>e.g.</u>, <u>Miller v. Servicemaster by Rees</u>, 851 P.2d 143, 145 (Ariz. Ct. App. 1992); <u>Cruey v. Gannett Co.</u>, 76 Cal. Rptr. 2d 670, 677-78 (Cal. Ct. App. 1998); <u>Vickers v. Abbott Labs.</u>, 719 N.E.2d 1101, 1107 (Ill. App. Ct. 1999); Robert D. Sack, <u>Sack on Defamation: Libel, Slander, and Related Problems</u> § 9.2.2.1, at 9-17 (2004). Although the New Hampshire Supreme Court has not addressed this issue in its own right, this court concludes that protecting employees' complaints of sexual harassment to their employees with a qualified privilege represents a straightforward application of the

20

Restatement rule endorsed by <u>Jones</u>.[7]

The court also concludes that the undisputed facts of this case satisfy the requirements of the qualified privilege as a matter of New Hampshire law. Caouette has admitted (1) making comments of the nature of those which Durham described in his complaint, (2) telling Panagiotes that people were spreading rumors and making up stories about him, and (3) saying "It is great to be accused of something I did not do" within Miller's earshot. Although Caouette denied making the specific comments Miller related in her initial complaint, he acknowledged talking to her about dressing in drag for Halloween. Similarly, Caouette admitted telling Kelly that he had a friend with whom he was intimate, but denied asking Kelly for sex.

This record establishes that, while certain portions of the complaints might have been inaccurate to Caouette's recollection, each of the complainants had a reasonable basis for believing his

---

[7]Courts have also held that like interests protect an employer's statement to its employees explaining that one of its co-workers has been dismissed for sexual harassment. <u>See</u>, <u>e.g.</u>, <u>Garziano v. E. I. Du Pont de Nemours & Co.</u>, 818 F.2d 380, 387-88 (5th Cir. 1987); <u>Alade v. Borg-Warner Protective Servs.</u>, 28 F. Supp. 2d 655, 656-57 (D.D.C. 1998); <u>Manning v. Cigna Corp.</u>, 807 F. Supp. 889, 898-900 (D. Conn. 1991); <u>Moss v. Mut. of Omaha Ins. Co.</u>, 1990 WL 485666, at *5 (D. Vt. Apr. 9, 1990); <u>Stockley v. AT & T Info. Sys.</u>, 687 F. Supp. 764, 769 (E.D.N.Y. 1988); <u>Hines v. Ark. La. Gas Co.</u>, 613 So. 2d 646, 656-58 (La. Ct. App. 1993). These cases provide additional support for the conclusion here.

or her account to be true.[8]  See Kuwik v. Starmark Star Mktg. & Admin., Inc., 619 N.E.2d 129, 135 (Ill. 1993) (reasoning that "misstatement of information should be afforded some degree of protection in order to facilitate the free flow of correct information" where qualified privilege applies).  There is also nothing to suggest that the employees acted in bad faith or out of malice in filing their complaints.  Indeed, OfficeMax required its employees to report instances of sexual harassment, and Caouette has not come forward with any evidence so much as suggesting that any of the complainants had an axe to grind with him.  See Duchesnaye, 125 N.H. at 253 (holding that plaintiff bears burden of proving malice to defeat qualified privilege once defendant shows privilege applies).

Although the New Hampshire Supreme Court has held that the

_____

[8]In Duchesnaye v. Munro Enters., 125 N.H. 244 (1984), the New Hampshire Supreme Court stated that the "reasonable grounds" test articulated in Chagnon was "necessarily inconsistent" with the then-recently announced rule extending liability for defamation of a private figure through the negligent publication of false and injurious matter.  125 N.H. at 253-54.  In Simpkins, however, the court invoked the Chagnon "reasonable grounds" test without any discussion of Duchesnaye, despite the fact that it had been decided nearly eleven years earlier.  Cf. Young v. Plymouth State Coll., 1999 WL 813887, at *12 (D.N.H. Sept. 21, 1999) (DiClerico, J.) (wondering about continued vitality of Chagnon test in light of Duchesnaye).  Accordingly, and in the absence of any argument from Caouette on this point, this court has applied the Chagnon test here.

22

presence of facts to support a defense of qualified privilege ordinarily presents a jury question, e.g., Thomson v. Cash, 119 N.H. 371, 378 (1979), it has also indicated that the issue may be resolved on summary judgment in appropriate cases. Pickering v. Frink, 123 N.H. 326, 331 (1983). Here, the record discloses no evidence that any of the employees who allegedly defamed Caouette exceeded their qualified privilege to report perceived instances of sexual harassment or retaliation to management. Cf. Chamberlin v. 101 Realty, Inc., 626 F. Supp. 865, 871 (D.N.H. 1985) (denying summary judgment on defamation claim over assertion of privilege given factual issue as to defendant's "good faith reasonable belief" for statement). The court therefore grants summary judgment to OfficeMax on Caouette's claims for defamation, libel, and slander on the basis of the qualified privilege protecting sexual harassment complaints.


Conclusion

For the foregoing reasons, OfficeMax's motion for summary judgment (document no. 33) is GRANTED. Caouette's motion for summary judgment (document no. 21) is DENIED. Caouette's motion to compel and for other relief (document no. 21) is also DENIED. OfficeMax's motions in limine (document nos. 41, 42, and 43) are

23

DENIED as moot.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

January 21, 2005

cc:  Wilfred G. Couette, pro se
     Jonathan S. Forman, Esquire
     Wilbur A. Glahn III, Esquire