Kris E. UDD, Plaintiff–Appellant,

v.

Larry G. MASSANARI,[1] Commissioner of Social Security, Defendant–Appellee.

No. 99–35515.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 2001.

Filed April 16, 2001.

As Amended on Denial of Rehearing May 3, 2001.

**1.** Larry G. Massanari is substituted for his predecessor, Kenneth S. Apfel, as Commis-
sioner of the Social Security Administration. Fed. R.App. P. 43(c)(2).

Joseph B. Lavin, Port Angeles, Washington, for the plaintiff-appellant.

Renee C. MacFarland, Social Security Administration, Office of General Counsel, Seattle, Washington, and Brian C. Kipnis, Office of the U.S. Attorney, Seattle, Washington, for the defendant-appellee.

Before: REINHARDT, WARDLAW, and RONALD M. GOULD, Circuit Judges.

REINHARDT, Circuit Judge:

This is an appeal from an order of the district court upholding the refusal of the Commissioner of the Social Security Administration to reopen an adverse benefits decision made in 1976. The claimant seeks benefits retroactive to that year on the ground that the termination of his benefits violated due process because he lacked the mental capacity to understand the termination notice and the procedures for requesting review of that termination.

I.

During his military service in 1973, Kris Udd began suffering from visual and auditory hallucinations and loss of control of his arms and legs. After his discharge, he

sought treatment from a Veterans Administration ("VA") hospital and was diagnosed with schizophrenia. From the time of this diagnosis to the present, he has received service-connected disability benefits from the Department of Veterans Affairs.

In March 1976, Udd applied for disability benefits from the Social Security Administration (SSA). SSA determined that he was disabled, with an onset date of May 3, 1974, and he commenced receiving benefits. The benefits were terminated as of October 31, 1976, but the reason for the termination is unknown, because SSA destroyed Udd's records pursuant to its record retention policy. At the time, Udd did not have an attorney or legal guardian responsible for pursuing his claim.

Udd did not receive disability benefits for eighteen years. In 1994, Udd filed a second application for social security disability benefits alleging disability beginning on November 1, 1976. At the reconsideration stage, SSA granted his application and determined that he was disabled from November 1, 1976 through the date of his application. However, his benefits were limited by a SSA rule providing that successful claimants may receive retroactive benefits only for the twelve months preceding the filing of an application for benefits. *See* 20 C.F.R. § 404.621(a)(1)(i). Udd filed a request for a hearing, asserting that the 1976 termination decision should be reopened to permit him to receive benefits retroactive to the date on which his benefits were terminated. Udd argued that his mental condition in 1976 was such that

he cannot be held responsible for the failure to make a timely request for review of the termination decision.[2]

After a hearing, the Administrative Law Judge ("ALJ") found that Udd did not lack the mental capacity on October 31, 1976 to understand the procedures for requesting review, stating, "[h]is mental impairment prevented him from working, but did not totally incapacitate him, as evidenced by his ability to live by himself and have relationships, and by his babysitting activities in December 1976." Accordingly, the ALJ refused to excuse Udd's failure to appeal or to vacate the termination decision and reinstate his benefits as of November 1, 1976.

Udd requested review of the ALJ's decision by the Appeals Council, but the Council concluded that there was no basis for granting the request for review and upheld the ALJ's determination as the final decision of the Commissioner of Social Security. Udd sought review in federal court. The district court found that the ALJ's findings were supported by substantial evidence and concluded that Udd had not established that his due process rights were violated by the Commissioner's refusal to reopen his 1976 termination of benefits. Udd timely filed this appeal.

## II.

■ The Social Security Act limits judicial review of the Commissioner's decisions to "any final decision ... made after a hearing." 42 U.S.C. § 405(g). A decision not to reopen a prior, final benefits deci-

---

2. Udd also asserted that he never received the notice of termination of benefits in 1976, and that even if he did receive the notice, it was constitutionally defective under *Gonzalez v. Sullivan,* 914 F.2d 1197 (9th Cir.1990). Be-

cause we hold that Udd lacked the mental capacity to understand the prior termination notice, we do not address his other arguments.

sion is discretionary and ordinarily does not constitute a final decision; therefore, it is not subject to judicial review. *Califano v. Sanders,* 430 U.S. 99, 107–09, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). *Sanders,* however, recognized an exception "where the Secretary's denial of a petition to reopen is challenged on constitutional grounds." *Id.* at 109, 97 S.Ct. 980. We have held that "the Sanders exception applies to any colorable constitutional claim of due process violation that implicates a due process right either to a meaningful opportunity to be heard or to seek reconsideration of an adverse benefits determination." *Evans v. Chater,* 110 F.3d 1480, 1483 (9th Cir.1997) (citations omitted). A challenge that is not "wholly insubstantial, immaterial, or frivolous" raises a colorable constitutional claim. *Boettcher v. Sec'y of Health & Human Serv.,* 759 F.2d 719, 722 (9th Cir. 1985).

■ Udd argues that due process requires reopening the prior termination decision because he lacked the mental capacity to understand the Secretary's termination notice and the procedures for contesting that termination. Where a claimant alleges that a prior determination should be reopened because he suffered from a mental impairment and was not represented by counsel at the time of the denial of benefits, he has asserted a colorable constitutional claim. *Evans,* 110 F.3d at 1483.[3] Accordingly, we hold that we have jurisdiction to consider the merits of Udd's due process claim.

### III.

■ It is axiomatic that due process requires that a claimant receive meaningful notice and an opportunity to be heard before his claim for disability benefits may be denied. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Udd argues that the 1976 termination of benefits denied him due process of law because his mental impairment prevented him from understanding the order of termination and complying with the administrative review process.

In 1991, SSA issued Ruling 91–5p ("SSR 91–5p"), which provides that if a claimant presents evidence that mental incapacity prevented him from requesting timely review of an administrative action, and the claimant had no one legally responsible for prosecuting the claim on his behalf at the time of the prior adverse action, SSA "will determine whether or not good cause exists for extending the time to request review." SSR 91–5p. "The claimant will have established mental incapacity for the purpose of establishing good cause when the evidence establishes that he or she lacked the mental capacity to understand the procedures for requesting review." SSR 91–5p. In making the 91–5p determination, the following four factors must be considered: (1) inability to read or write; (2) lack of facility with the English language; (3) limited education; and (4) any mental or physical condition which limits the claimant's ability to do things for him/herself. SSR 91–5p. In all cases, "[t]he adjudicator will resolve any reasonable doubt in favor of the claimant." SSR 91–5p.

If it is determined, applying the proper criteria, that the claimant lacked the mental capacity to understand the procedures for requesting review, time limits are tolled "regardless of how much time has passed since the prior administrative action." SSR 91–5p. In such cases, the

---

**3.** However, lack of representation by counsel is not required to state a colorable constitutional claim. *See Evans,* 110 F.3d at 1484 (Schwarzer, J., concurring) ("I do not understand [the court's decision] to hold that lack of counsel is a necessary element of [a colorable due process] claim.").

adjudicator must "take the action which would have been appropriate had the claimant filed a timely request for review." SSR 91–5p. Thus, "a finding of good cause [to extend the time for review] will result either in a determination or decision that is subject to further administrative or judicial review of the claim, or a dismissal (for reasons other than late filing) of the request for review, as appropriate." SSR 91–5p.

We review an ALJ's decision in a 91–5p hearing under the substantial evidence standard to determine whether the claimant lacked the requisite mental capacity at the time of the adverse benefits decision. *Evans,* 110 F.3d at 1483. If so, the termination of his benefits constitutes a due process violation. *Id.*

 We hold that Udd met the requirements set forth in SSR 91–5p at the time of the termination of benefits on October 31, 1976. It is undisputed that Udd had no attorney or other representative legally responsible for prosecuting his claim at the time.[4] Udd presented overwhelming evidence from his medical records indicating that he lacked the mental capacity to understand the procedures for review. In evaluating this evidence, the ALJ applied an incorrect legal standard and failed to resolve doubts in favor of the claimant, as is required by SSR 91–5p. In sum, substantial evidence does not support the ALJ's finding in this case.

Prior to the hearing before the ALJ, the SSA had already determined that Udd suffered from schizophrenia and met the listing of impairments as of November 1, 1976. No challenge was made to this finding. Outpatient treatment notes from the VA hospital reveal that Udd exhibited symptoms of disorganization, needed assistance getting dressed, experienced hallucinations, and exercised poor compliance with his medication in 1975 and 1976. When he failed to take his medication, he developed a vacant look and exhibited poor contact. He lived with his mother for part of this period, and, after he moved out of his mother's home, his therapist advised his mother to check up on him daily.

The VA records reveal that Udd experienced a crisis and required hospitalization less than a week before the termination of his benefits. On October 22, Udd's mother brought him to the VA hospital, where he was admitted with a diagnosis of schizophrenia. The VA physician completing the admission certificate reported that Udd was experiencing auditory hallucinations and bizarre episodes, and that his insight and judgment were "poor." He left the hospital against medical advice on October 24, and missed his next outpatient appointment on November 11. When he was finally seen at the VA on December 27, his doctor noted that he had not been taking his medication consistently.

Thus, the record shows that Udd suffered from a serious mental impairment that severely limited his ability to do things for himself. Moreover, his medical records indicate that he experienced a crisis requiring hospitalization and that he was not taking his medication consistently at precisely the time when he would have received the notice terminating his benefits. This evidence is more than sufficient to establish that he lacked the mental capacity to understand the procedures for

---

4. The fact that Udd's mother and girlfriend assisted him in applying for benefits is irrelevant to the resolution of Udd's claim. Where a claimant does not have a legal guardian or representative payee, it is the mental capacity of the claimant that determines whether the requirements of due process have been ful-

filled. *See Culbertson v. Sec'y of Health & Human Servs.,* 859 F.2d 319, 324 (4th Cir. 1988) (rejecting the Secretary's argument that because the claimant's father had filed the original benefits application for his daughter, his competence satisfied the meaningful notice requirement).

requesting review under SSR 91–5p when his benefits were terminated on October 31, 1976.

■ Despite this specific evidence regarding Udd's mental capacity at the time of the termination of benefits, in denying Udd's petition the ALJ noted only that Udd's impairment "did not totally incapacitate him, as evidenced by his ability to live by himself and have relationships, and by his babysitting activities in December 1976." The ALJ applied an incorrect standard when considering the factors relevant to a determination of a claimant's mental capacity to understand the administrative review procedures: SSR 91–5p does not require that the impairment "totally incapacitate" the claimant, but merely that it "limit [his] ability to do things for him/herself." SSR 91–5p.

Moreover, the evidence in the record does not support the ALJ's finding that Udd was able to live by himself. Even after Udd moved out of his mother's house, his mother was required to check up on him regularly. His hospitalization just one week before the termination suggests that he did not have the ability to live by himself at the very time when he would have received a notice from SSA. Evidence of babysitting alone is insufficient to support a finding that Udd was competent. *See Ogden v. Apfel,* 1998 WL 372638 at *5 (W.D.Va.1998) (finding that reopening was proper because the evidence of claimant's mental condition and medical history "far outweigh[ed] that pointed to by the government in its effort to show [claimant's] competence, namely her ability to take care of a few children in her home ...". In any case, Udd's babysitting occurred over a month after the termination (and his hospitalization), and there is some question as to how competent Udd was at babysitting: his girlfriend reported that he was "impatient" while watching the children, and she soon moved out because he became threatening and violent toward her.

The ALJ's focus on Udd's living by himself and short-lived attempt at babysitting for his girlfriend despite the abundance of evidence regarding his mental incapacity at the precise time of the termination of benefits makes it clear that the ALJ failed to resolve any reasonable doubt in favor of Udd, as is required by SSR 91–5p. A 91–5p determination must be reversed where the ALJ fails to resolve any reasonable doubt in the claimant's favor. *See Hill v. Callahan,* 962 F.Supp. 1341, 1346 (D.Or. 1997) (finding that due process required reopening because "there [was] reasonable doubt that [the claimant] had the mental capacity to understand the procedures for requesting review"); *Stieberger v. Apfel,* 1998 WL 556156, at * 11 (S.D.N.Y.1998) (holding that "the Commissioner was obligated to give [the claimant] the benefit of all reasonable doubts," and reversing the refusal to reopen because the Commissioner failed to do so).

The Commissioner argues that this case is similar to *Evans v. Chater,* in which we affirmed an ALJ's ruling that a claimant who suffered from depression and alcoholism did not show good cause under SSR 91–5p to reopen his prior applications. However, Evans presented far less compelling evidence of mental incapacity than Udd does here. *See Evans,* 110 F.3d at 1484. Evans was judged to be "functioning well and able to care for himself" by the VA, was fully oriented with no evidence of a thought disorder, maintained intact judgment, and was found to be capable of handling his own affairs. *Id.* Udd, by contrast, suffered from hallucinations and thought disorders, had poor insight and judgment, and tended to lose contact when he failed to take his medication. Udd also was not capable of handling his own affairs: his mother took care of all his important mail for him and had to make

sure that he paid his bills and kept his bank account in order. Moreover, SSA has determined that Udd suffered from schizophrenia and was disabled as of November 1, 1976—one day after the termination of his benefits.

█ Accordingly, we hold that Udd has established that he lacked the mental capacity on October 31, 1976 to understand the cessation of his disability benefits and to take the steps necessary to pursue an appeal. The termination of his benefits without meaningful notice thus constituted a denial of due process. Ordinarily, when a due process violation requires that an application for benefits be reopened, the case is remanded to the Commissioner so that the agency can rule on the merits of the plaintiff's disability claims in the first instance. *Stieberger,* 1998 WL 556156, at *11–12; *see also* SSR 91–5p ("If the adjudicator determines good cause exists, he or she will extend the time for requesting review and take that action that would have been appropriate had the claimant filed a timely request for review."). Here, however, the SSA has already made that determination. It held, in connection with Udd's second application for disability benefits, that he has been continuously disabled from November 1, 1976. There is therefore no need for further administrative adjudication beyond the calculation of benefits retroactive to November 1, 1976.

### IV.

We reverse the ALJ's determination and remand to the district court with instructions to direct the Commissioner to reopen the application for disability insurance benefits filed by Udd in 1976 and to award him benefits retroactive to November 1, 1976.

REVERSED AND REMANDED.