Original
No. 2007-245

## PETITION OF GRANT KILTON

Argued: November 13, 2007
Opinion Issued: December 31, 2007

*New Hampshire Legal Assistance*, of Claremont and Concord (*Jonathan P. Baird & a.* on the brief, and *Mr. Baird* orally), for the petitioner.

*Kelly A. Ayotte*, attorney general (*Jill A. Desrochers*, attorney, on the brief, and *Rosemary Wiant*, attorney, orally), for the respondent.

BRODERICK, C.J. The petitioner, Grant Kilton, has petitioned for a writ of certiorari, *see* SUP. CT. R. 11, challenging the denial by the respondent, the New Hampshire Department of Health and Human Services (department), of his application for benefits under the Aid to the Permanently and Totally Disabled (APTD) program. *See* RSA 167:6, VI (2002). We affirm.

I

The record supports the following facts. In April 2005, the petitioner applied for benefits under the APTD program, which is one of various public assistance programs administered by the department. *See Baker v. City of Concord*, 916 F.2d 744, 745 (1st Cir. 1990). Pursuant to RSA 167:6, VI, a person is eligible for APTD benefits "who is between the ages of 18 and 64 years of age inclusive; is a resident of the state; and is disabled as defined in the federal Social Security Act, ... except that the minimum required duration of the impairment shall be 48 months." Disability is determined by reference to "the standards for 'substantial gainful activity' as used in the Social Security Act." RSA 167:6, VI.

The department denied the petitioner's application for APTD benefits in mid-October because his impairment failed to meet "the severity required" and would not prevent him "from performing substantial gainful activity for 48 consecutive months." Specifically, the notice of denial informed the petitioner:

> You have been denied the medical eligibility for Aid to the Permanently & Totally Disabled (APTD) category of eligibility for NH Medicaid. NH Medicaid requires that you have an impairment that meets or equals the same level of severity as that established for SSI/SSDI eligibility *and* that the impairment(s) prevent substantial gainful activity for 48 consecutive months. (RSA 167:6, VI) You do not have an impairment that meets the severity required nor will your impairment prevent you from performing substantial gainful activity for 48 consecutive months.

The notice also referred to medical records, which indicated that, while the petitioner suffers from generalized anxiety disorder and depression, these conditions should remit with counseling and medication, and that he had no cognitive impairment that would prevent him from working in his prior job as a machine operator or assembler. Moreover, the notice of denial noted that the petitioner's prognosis for returning to work was within a year or less, thus, falling short of the forty-eight-month durational requirement for APTD benefits. Further, the notice stated, in pertinent part: "If you disagree with this decision, you have the right to appeal and ask for a fair hearing. You may represent yourself or be represented by others including legal counsel, at the appeal hearing."

The petitioner timely requested a fair hearing. The form on which he did so stated:

> You may represent yourself or be represented by others, including legal counsel. If you need free legal counsel, consult your telephone directory or District Office for the New Hampshire Legal Assistance office nearest you. Contact your representative as quickly as possible to avoid unnecessary delay. **THE DIVISION WILL NOT PAY YOUR LEGAL FEES.**

In November, the department sent the petitioner a notice of hearing, scheduling the hearing for February 16, 2006. This notice provided, in pertinent part: "Each party has the right to be represented by an attorney, however, the cost of representation shall be at the party's expense. Whether you have an attorney or not, each party **must** comply with the mandatory pre-hearing disclosure requirements. (*See* attached *Frequently Asked Questions*)."

The "Frequently Asked Questions" material included the following information about a claimant's right to an attorney: "You may represent yourself, be represented by a friend, relative, or other person, or may be represented by an attorney at your own expense[;]" and "You do not *need*

an attorney, however, you may want one to protect your interests and rights. The laws and rules are the same whether or not you have an attorney." The "Frequently Asked Questions" attachment also included a list of organizations to assist individuals or to provide them with a referral for legal counsel. This list included numerous offices of New Hampshire Legal Assistance (NHLA). *See* N.H. ADMIN. RULES, He-C 203.04(a)(2).

The petitioner represented himself at the February hearing, although his case manager accompanied him for support. The department was also not represented by counsel. A registered nurse, testifying for the department as a medical witness, explained the process by which the petitioner's application was denied. Specifically, she testified that a medical review team examined his application to determine: (1) whether he was currently engaged in substantial gainful activity; (2) whether he had alleged a severe impairment; (3) whether there was documentation to support such an allegation; and (4) whether his impairments met the forty-eight-month durational requirement. She further testified that based upon documents in the file, the review team determined that the petitioner's impairments (anxiety and depression) did not meet the durational requirement because, with antipsychotic medication, his impairments "immediately [a]meliorate[]."

The petitioner questioned the nurse briefly. The presiding officer then asked the petitioner a number of questions "to help [him] tell [his] story." The petitioner testified that since the department had denied his application, he had been hospitalized for anxiety and depression "three or four times." Because the petitioner had identified, but did not have possession of records that the presiding officer believed might be relevant, she indicated that she would hold the record open for sixty days to permit the petitioner to submit additional information and to allow the department to submit further information in response, if any.

On April 26, 2006, soon after the sixty days expired, NHLA informed the department by letter that it now represented the petitioner and asked the department to reconvene the hearing so that NHLA could represent him. In early May, the department denied the request, stating that the record was now closed and that granting the request "would only further delay the already too lengthy appeal process."

Approximately three months later, on August 10, 2006, the presiding officer issued her final decision affirming the initial decision to deny the petitioner's application for benefits. The petitioner, through counsel, moved for reconsideration, asserting, among other things, that the department had failed to notify him adequately of his right to seek free legal counsel. On March 9, 2007, the presiding officer denied the

petitioner's motion for reconsideration, and this petition for writ of certiorari followed.

## II

■ "The only judicial review of a fair hearings decision issued by the [department] is by petition for a writ of certiorari." *Petition of Walker*, 138 N.H. 471, 473 (1994). Review on certiorari is an extraordinary remedy, usually available only in the absence of a right to appeal, and only at the discretion of the court. *Petition of Chase Home for Children*, 155 N.H. 528, 532 (2007). Our review of an administrative agency's decision on a petition for certiorari is limited to determining whether the agency has acted illegally with respect to jurisdiction, authority or observance of the law or has unsustainably exercised its discretion or acted arbitrarily, unreasonably or capriciously. *Id.* We exercise our power to grant such writs sparingly and only where to do otherwise would result in substantial injustice. *Id.*

## III

The petitioner argues that his federal and state constitutional rights to due process were violated because he received inadequate oral and written notice of his right to seek free legal representation. *See* U.S. CONST. amend. XIV; N.H. CONST. pt. I, art. 15. We first address the petitioner's claims under the State Constitution, citing federal opinions for guidance only. *See State v. Ball*, 124 N.H. 226, 231-33 (1983). "This court is the final arbiter of the due process requirements of the State Constitution." *In re Father 2006-360*, 155 N.H. 93, 95 (2007) (quotation omitted).

Part I, Article 15 of the State Constitution provides, in pertinent part: "No [person] shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land." "[T]he law of the land is synonymous with due process of law." *Bragg v. Director, N.H. Div. of Motor Vehicles*, 141 N.H. 677, 678 (1997) (quotations omitted).

■ To determine whether particular procedures satisfy the requirements of due process, we typically employ a two-prong analysis. *Appeal of Town of Bethlehem*, 154 N.H. 314, 328 (2006). Initially, we ascertain whether a legally protected interest has been implicated. *See id.*; *see also Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). We then determine whether the procedures provided afford appropriate safeguards against a wrongful deprivation of the protected interest. *Appeal of Town of Bethlehem*, 154 N.H. at 328.

## A

The department contends that the petitioner is not entitled to due process protection because he has no legally protected property interest in obtaining APTD benefits. We will assume, without deciding, that the petitioner had a property interest entitled to due process protection. We turn then to deciding whether the procedures at issue complied with due process. *See id.*

## B

Without citing to any direct authority, the petitioner asserts that "due process require[s] clear and understandable written notice about the right to seek free legal counsel, followed by an oral inquiry from the Hearing Officer at the administrative hearing about whether [the petitioner] understood he had the right to seek free legal representation." This notice, he asserts, should include "essential information about the value of an attorney in helping to protect an appellant's interests." He notes that these kinds of procedures are statutorily required in social security administration appeals and, in effect, asks the court to hold that they are constitutionally mandated in appeals from the denial of an application for APTD benefits. *See Evangelista v. Secretary of H.H.S.*, 826 F.2d 136, 142-43 (1st Cir. 1987); *cf. Simmons v. Traughber*, 791 S.W.2d 21, 24-25 (Tenn. 1990) (ruling that these kinds of procedures are required by state unemployment compensation statute). He cites no direct authority to support his assertion that due process requires the notice to which he claims entitlement, and we have found none. Our review of the record reveals that, contrary to his assertions, the petitioner received all of the notice that he was constitutionally due.

 "For more than a century, the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Berube v. Belhumeur*, 139 N.H. 562, 567 (1995) (quotation omitted). "The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'" *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978). To satisfy due process, "[t]he notice must be of such nature as reasonably to convey the required information" and must be more than "a mere gesture." *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314, 315 (1950). "[W]hen notice is a person's due the means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Jones v. Flowers*, 547 U.S. 220, 229 (2006) (quotation, ellipsis and brackets omitted). "Due process, however, does not require

perfect notice, but only notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Appeal of Hiscoe*, 147 N.H. 223, 227 (2001) (quotation omitted). "Thus, our inquiry focuses upon whether notice was fair and reasonable under the particular facts and circumstances of each case." *Id.*

With respect to terminating or reducing welfare benefits, we have held that "a timely and adequate notice stating the reasons for the proposed action must be given to the recipients of the benefits." *Petition of Clark*, 122 N.H. 888, 891 (1982); *see Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970). "To be considered adequate, the notice must give a reasonably complete statement of the information upon which the proposed action is based, the full reasons for that action, and any other data the recipients might need to figure out their eligibility." *Petition of Clark*, 122 N.H. at 891. We assume, without deciding, that these rules apply to denials of an application for APTD benefits.

The record shows that, when the department denied the petitioner's application for APTD benefits, he was notified: (1) of the full reasons for the denial; (2) how the department reached its decision; (3) the statutory basis for the denial; (4) the standards by which his eligibility for APTD benefits was determined; (5) that he had the right to appeal the denial and ask for a fair hearing; (6) that he had the right to represent himself or be represented by others, including legal counsel; and (7) if he wished to appeal, that he had thirty days to contact his case worker and tell him or her that he wished to appeal the denial.

In addition, the petitioner received notice on the form requesting a fair hearing that: (1) if he needed help completing the form or wished to request a hearing verbally, he could contact his district office; (2) he had the right to represent himself or be represented by others, including legal counsel, at the hearing; and (3) if he needed free legal counsel, he could consult the telephone directory or NHLA; and (4) the department would not pay his legal fees.

Further, the notice of hearing notified the petitioner of the date, time and location of the hearing, the applicable statutes and rules, that a presiding officer would hold the hearing, that failure to attend the hearing without good cause could result in the appeal being dismissed, and that he had a right to be represented by an attorney at his own expense. *See* RSA 541-A:31, III (2007); N.H. ADMIN. RULES, He-C 203.04 (notice of hearing must include information required by RSA 541-A:31, III and "[a] list of the organizations in New Hampshire which provide free or reduced cost legal services").

Additionally, the petitioner received information from the department's "Frequently Asked Questions" regarding his rights at the hearing, including his right to: be represented by an attorney at his own expense; examine his case file; testify at the hearing; have witnesses testify at the hearing; introduce evidence; present relevant arguments; cross-examine the other party's witnesses; and question or refute any testimony or evidence. The "Frequently Asked Questions" also informed the petitioner about how to identify his exhibits, what to do if he could not attend the hearing, when to arrive at the hearing, the procedures that would be used at the hearing, and who to contact if he had additional questions. Moreover, the "Frequently Asked Questions" included a list of organizations in New Hampshire that could assist the petitioner or provide him with a referral for legal counsel.

■ We hold that the notice the petitioner received more than satisfied due process. *See Garrett v. Puett*, 707 F.2d 930, 931 (6th Cir. 1983) (notice of reductions and terminations in welfare benefits satisfied due process when they contained: (1) a detailed statement of the intended action; (2) the reason for the change in status; (3) citation to specific statutory authority; and (4) specific notice of the recipient's right to appeal); *Brown v. Lavine*, 333 N.E.2d 374, 376 (N.Y. 1975) (regulations entitling recipient of aid to the disabled to notice of any action affecting right to assistance, of right to fair hearing, of method of obtaining fair hearing, that recipient may represent self or may be represented by counsel, relative or friend or other spokesman, and of availability of community legal services "amply safeguard" recipient's interest). The notice given to the petitioner gave him a "reasonably complete statement" of the information upon which the denial of his application was based, "the full reasons" for the denial, and data regarding what he might need to figure out his eligibility. *Petition of Clark*, 122 N.H. at 891. Moreover, we hold that the notice was fair and reasonable under the particular facts of this case. *See Appeal of Hiscoe*, 147 N.H. at 227. The petitioner, thus, received all of the notice to which due process entitled him. The Due Process Clause of the State Constitution does not require that he receive any additional notice, including notice of his ability to seek free legal counsel.

The petitioner also contends that the notice he received was insufficient because it was misleading with respect to his right to seek free legal counsel. We observe, first, that the petitioner had neither a statutory nor a regulatory "right" to seek free legal counsel. Rather, by statute, he had a right to be notified that he could have an attorney present at the fair hearing, *see* RSA 541-A:31, III, and pursuant to regulation, he had a right

to receive a list of organizations in New Hampshire that provide free or reduced cost legal services, *see* N.H. ADMIN. RULES, He-C 203.04.

█ The record demonstrates that the notice the petitioner received of these rights was neither confusing nor misleading. The petitioner was notified numerous times of his right to have counsel present at his own expense and he was given the names and contact information for community organizations that provide legal counsel. Several NHLA offices were included in that list and the fair hearing request form specifically identified NHLA as an organization that provides free legal services.

█ The petitioner also contends that the notice he received was constitutionally infirm because it was not tailored to "the needs of [a] vulnerable population, of which [the petitioner] is an example." We hold that the "practicalities and peculiarities" of this case do not require a different kind of notice than that which the petitioner received. *Jones*, 547 U.S. at 230 (quotation omitted).

The petitioner does not argue that his physical or mental condition prevented him from understanding the notice that his application was denied or from complying with the administrative review process. *See Udd v. Massanari*, 245 F.3d 1096, 1100-01 (9th Cir. 2001). Nor was there any evidence that the petitioner was unable to challenge the decision to deny him benefits. *See id.* at 1102. Indeed, the record shows that he timely submitted a request for fair hearing.

While the petitioner relies upon *Covey v. Town of Somers*, 351 U.S. 141, 146-47 (1956), *Vargas v. Trainor*, 508 F.2d 485, 489-90 (7th Cir. 1974), *cert. denied*, 420 U.S. 1008 (1975), and *Tripp v. Coler*, 640 F. Supp. 848, 850 (N.D. Ill. 1986), these cases are distinguishable from the instant matter.

In *Covey*, the recipient of the notice had no guardian, was known to be an incompetent and was "wholly unable to understand the nature of the proceedings against her." *Covey*, 351 U.S. at 146-47. By contrast, there is no evidence that, and the petitioner does not allege that, he was unable to understand the nature of the proceedings against him or unable to appeal the denial of his application for benefits.

Nor is this case similar to *Vargas*. That case involved notice addressed to the "aged, blind or disabled, many of whom . . . [it] could have [been] anticipated, would be unable or disinclined, because of physical [or mental] handicaps . . . to take the necessary affirmative action." *Vargas*, 508 F.2d at 489. The notice in *Vargas* informed the recipients that they had only ten days to meet with their caseworkers to learn why their benefits had been reduced or terminated and then to appeal. *Id.* at 489-90. By contrast, here, the petitioner was: afforded written notice of the reasons that the department denied his application; given thirty days to meet with his case

worker to notify him or her that he intended to appeal; and given the option of requesting a fair hearing by filing a form or by making the request verbally.

The notice the petitioner received here was also superior to that at issue in *Tripp*. The appellants in *Tripp* were a class of people whose continued use of Medicaid had been restricted or terminated by the Illinois Department of Public Aid for overuse of medical services. *Tripp*, 640 F. Supp. at 849. The notices of these decisions, however, failed to inform the class adequately of the agency's reasons for its decisions. *Id.* at 858-59. Rather, the notices gave ultimate reasons, did not identify the legal standard by which a recipient's medical usage was judged, failed to identify the precise medical items or services at issue, and even failed to identify which person in the recipient's family was determined to have overused medical care. *Id.* The notice the petitioner received of the reasons the department denied his application has none of these deficiencies.

■ The petitioner asserts that without additional notice of his "right" to seek free legal counsel, the process he received was fundamentally unfair. The parties argue that to determine whether due process requires the additional safeguards the petitioner seeks in this appeal, we must balance the following three factors:

> (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail.

*In re Father 2006-360,* 155 N.H. at 95; *see Mathews,* 424 U.S. at 335. Because both parties rely upon it, we assume, without deciding, that this three-part test applies. *But see Dusenbery v. United States,* 534 U.S. 161, 168 (2002) ("We have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims."); *Grayden v. Rhodes,* 345 F.3d 1225, 1242 (11th Cir. 2003) (under *Mathews*, tenants entitled to contemporaneous notice, but court declines to apply *Mathews* to decide what type of notice is adequate to meet the contemporaneous notice requirement).

We find the United States Supreme Court's decision in *Mathews* instructive. In *Mathews*, the court evaluated whether due process required an evidentiary hearing before an individual's social security disability

benefits could be terminated. *Mathews*, 424 U.S. at 323. To be eligible for such benefits, "a worker must demonstrate that he is unable to engage in any substantial gainful activity," as defined by the social security administration act. *Id.* at 336 (quotation omitted).

In balancing the three factors set forth above, the Court first looked to the interest of a social security disability benefits recipient in continued and uninterrupted receipt of benefits pending final determination of his claim. *Id.* at 340. The Court noted that although it had previously held that due process required an evidentiary hearing before a welfare recipient could be temporarily deprived of welfare benefits, *see Goldberg*, 397 U.S. at 264, the private interest at stake in *Goldberg* differed from that at stake in *Mathews*. *Mathews*, 424 U.S. at 340-41. "[T]he disabled worker's need is likely to be less than that of a welfare recipient. In addition to the possibility of access to private resources, other forms of government assistance will become available where the termination of disability benefits places a worker or his family below subsistence level." *Id.* at 342. Because of "these potential sources of temporary income, there is less reason here than in *Goldberg* to depart from the ordinary principle . . . that something less than an evidentiary hearing is sufficient prior to adverse administrative action." *Id.* at 343.

The Court then examined "the fairness and reliability of the existing pretermination procedures, and the probable value, if any, of additional procedural safeguards." *Id.* The Court observed that "the decision whether to discontinue disability benefits will turn, in most cases, upon routine, standard, and unbiased medical reports by physician specialists." *Id.* at 344 (quotation omitted). The risk of error, the Court ruled, was lower than in proceedings to determine welfare eligibility where "a wide variety of information may be deemed relevant, and issues of witness credibility and veracity often are critical to the decisionmaking process." *Id.* at 343-44. Thus, the Court reasoned, "[t]he potential value of an evidentiary hearing . . . [was] substantially less . . . than in *Goldberg*," particularly "where, as here, the prescribed procedures not only provide the claimant with an effective process for asserting his claim prior to any administrative action, but also assure a right to an evidentiary hearing, as well as to subsequent judicial review, before the denial of his claim becomes final." *Id.* at 344-45, 349.

The Court finally examined "the administrative burden and other societal costs that would be associated with requiring, as a matter of constitutional right, an evidentiary hearing upon demand in all cases prior to the termination of disability benefits." *Id.* at 347. The Court recognized that the financial cost and administrative burden "would not be insubstantial." *Id.* Ultimately, the Court ruled that a pretermination

evidentiary hearing was not required, observing that this type of judicial procedure need not be imposed to assure that the administrative process at issue was fair. *Id.* at 348-49.

█ The petitioner's private interest in obtaining APTD benefits is similar to the private interest at stake in *Mathews*. Like the recipient in *Mathews*, to be entitled to benefits, the petitioner must demonstrate that he is unable to engage in any "substantial gainful activity," as defined by the social security administration act. RSA 167:6, VI; *see Mathews*, 424 U.S. at 336. Moreover, because the petitioner must meet an eligibility standard that is similar to that in *Mathews*, determining the petitioner's eligibility for APTD benefits "will turn, in most cases, upon routine, standard, and unbiased medical reports by physician specialists." *Mathews*, 424 U.S. at 344 (quotation omitted).

Further, the process by which the petitioner's eligibility for APTD benefits is determined already includes the following safeguards: (1) assistance from department personnel in completing an application for benefits, *see* RSA 167:8 (Supp. 2007); (2) written notification of whether the application has been accepted or denied, *see* RSA 167:10 (2002); (3) if the application has been denied, a statement of the specific reasons therefor, *see id.*; (4) if an application has been denied, notice that the person is entitled to request a hearing, *see* N.H. ADMIN. RULES, He-C 203.02; (5) a hearing notice that includes a statement of the time, place, and nature of the hearing, a statement of the legal authority under which the hearing is to be held, a reference to the particular sections of the statutes and rules involved, a short and plain statement of the issues involved, a statement that each party has the right to have an attorney present to represent the party at the party's expense, and a list of the organizations in New Hampshire that provide free or reduced cost legal services, *see* RSA 541-A:31, III; N.H. ADMIN. RULES, He-C 203.04; (6) an evidentiary hearing held before a presiding officer, *see* RSA 541-A:33 (2007); N.H. ADMIN. RULES, He-C 201.05, of which a record is made, and at which the rules of evidence do not apply, *see* RSA 541-A:33; N.H. ADMIN. RULES, He-C 203.15 to He-C 203.18; (7) the right to have an attorney present at the hearing at the applicant's expense; *see* RSA 541-A:31, III; N.H. ADMIN. RULES, He-C 203.04; (8) the opportunity to present witnesses and cross-examine the other party's witnesses at the hearing, as well as to submit proposed findings of fact and rulings of law to the presiding officer, *see* RSA 541-A:31, IV (2007); RSA 541-A:33; N.H. ADMIN. RULES, He-C 203.19; (9) a written decision on the merits or a decision stated on the record that includes findings of fact and conclusions of law, *see* RSA 541-A:35 (2007); N.H. ADMIN. RULES, He-C 203.19(c), He-

C 203.22; (10) an opportunity to file a motion for reconsideration, *see* N.H. ADMIN. RULES, He-C 204; (11) a written decision on the motion for reconsideration, *see* N.H. ADMIN. RULES, He-C 203.22; and (12) the opportunity to seek judicial review by filing a petition for writ of certiorari, *see Petition of Walker*, 138 N.H. at 473.

■ We hold that these procedures adequately ensure that the process for reviewing APTD eligibility determinations is fair. *See Brown*, 333 N.E.2d at 376. The potential value of additional notice that an applicant may seek free legal representation is relatively minimal. *See id.* at 376-77. The procedure described above "as a whole would appear designed to minimize inaccuracies and to assure quality and fairness in adjudication." *Id.* at 376.

Finally, requiring the department to issue additional notices to the applicant of his ability to seek free legal counsel would impose some financial and administrative burden on the department, as would requiring the presiding officer to notify the applicant verbally of this right. In balancing the three factors, we conclude that given the petitioner's property interest, the low risk of erroneous deprivation of that interest, and the government's interest in avoiding a fiscal and administrative burden, due process does not require the additional safeguards the petitioner identifies in this appeal. "We cannot say that fairness can only be achieved" with the additional safeguards the petitioner seeks in this appeal. *Id.* at 376. If these safeguards are to be provided, "it is for the Legislature to say so, for constitutional due process does not command it." *Id.* To the extent that the petitioner argues that, as a matter of policy, applicants appealing the denial of their applications for APTD benefits *should* have the same procedural protections as are provided to claimants in federal social security administration act appeals, *see Evangelista*, 826 F.2d at 142-43, he makes his argument in the wrong forum. Matters of public policy are reserved for the legislature, and we therefore leave to it the task of addressing the petitioner's concerns. *Cloutier v. City of Berlin*, 154 N.H. 13, 22 (2006).

While at oral argument, the petitioner asserted, in effect, that he had a due process right to counsel, in his brief he contended that he was "not asking the Court to establish a new right to counsel in civil cases," but rather was "asking [it] to mandate meaningful notice." Because the petitioner has not briefed the argument that he had a due process right to counsel, we decline to address it. *See In the Matter of Bazemore & Jack*, 153 N.H. 351, 356 (2006).

The petitioner also argues that notice of his "right" to seek free legal counsel was "essential information" that Part I, Article 1 of the State

Constitution required the department to give him. He relies upon *Carbonneau v. Town of Rye*, 120 N.H. 96, 99 (1980), and *Savage v. Town of Rye*, 120 N.H. 409, 411 (1980), for this proposition. Both *Carbonneau* and *Savage* concern a town's obligation under Part I, Article 1 to assist its citizens. In *Carbonneau*, we reminded the town of its obligation under Part I, Article 1 to assist its citizens in applying for certain permits and approvals. *See Carbonneau*, 120 N.H. at 99. In *Savage*, we ruled that such assistance includes informing applicants for subdivision approval "not only whether their applications are substantively acceptable but also whether they are technically in order." *Savage*, 120 N.H. at 411. In neither case did we adopt the broad rule the petitioner advocates in this appeal.

Because the Federal Constitution offers the petitioner no greater protection under these circumstances, we reach the same conclusion under both constitutions. *See Douglas v. Douglas*, 143 N.H. 419, 424 (1999).

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.