# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0039, <u>Crossings at Sleepy Hollow Cooperative, Inc. v. Town of Newmarket</u>, the court on November 29, 2022, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The plaintiff, Crossings at Sleepy Hollow Cooperative, Inc., appeals the order of the Superior Court (<u>Ignatius</u>, J.), following a bench trial, affirming the decision of the defendant, the Town of Newmarket, to deny its application for a tax abatement. <u>See</u> RSA 76:17 (Supp. 2021). The plaintiff argues that an abatement is warranted on grounds of poverty and inability to pay. We affirm.

The plaintiff is a cooperative association formed for the purpose of owning and operating a manufactured housing park in the Town of Newmarket. Members of the association own and reside in manufactured homes placed on the property. In 2020, in response to a property tax increase, the plaintiff applied for a tax abatement for the 2019 tax year. The plaintiff asserted that an abatement was necessary because rent increases necessary to pay the tax would have a negative impact on the low-to-moderate-income residents of the park. After the town denied the application, the plaintiff appealed to the superior court.

Absent an express statutory provision to the contrary, RSA 75:1 (Supp. 2021) requires municipalities to assess real property "at its market value." RSA 76:16 (Supp. 2021), however, permits municipalities to abate taxes levied on real property "for good cause shown." We have held that "poverty and inability to pay are good cause for a tax abatement." <u>Ansara v. City of Nashua</u>, 118 N.H. 879, 880 (1978) (quotation omitted).

A taxpayer aggrieved by the town's denial of a tax abatement application may appeal to the superior court, "which shall make such order thereon as justice requires." RSA 76:17. The superior court may abate taxes for any cause that would justify an abatement by the town. <u>LSP Assoc. v. Town of Gilford</u>, 142 N.H. 369, 374 (1997). The plaintiff bears the burden to show that an abatement is justified. <u>Ansara</u>, 118 N.H. at 880. Tax abatement procedures are equitable in nature. <u>Porter v. Town of Sanbornton</u>, 150 N.H. 363, 368 (2003). We will affirm the trial court's equitable decision if the record establishes an objective basis sufficient to sustain its discretionary judgment. <u>Benoit v. Cerasaro</u>, 169 N.H. 10, 19-20 (2016).

The plaintiff first argues that the trial court erred in finding that a 2021 income survey, which showed that the park is a low-to-moderate-income community, was not representative of park residents. The trial court found that eighty-six income surveys were delivered to the residents, one for each occupied unit on the property, and that 47 responses were received, a response rate of approximately 55 percent. The court credited the testimony of the witness who conducted the survey, but noted that "[t]he record contains no data concerning the income level of the 39 individuals or households that did not respond to the survey." Contrary to the plaintiff's assertion, however, the court did not expressly find that the income survey was not representative of park residents. Rather, the court found that the evidence was insufficient to show that a "blanket approach," that is, an abatement benefitting all residents regardless of income, is warranted, given that unit owners can apply for individual abatements of taxes levied on their manufactured homes, rent assistance, and elderly tax exemptions.

"[P]laintiffs who claim that they are entitled to an abatement because of poverty and inability to pay, and who have some equity in their homes, must show that it is not reasonable for them to relocate, refinance, or otherwise obtain additional public assistance." Ansara, 118 N.H. at 881. "Without such a showing, the equities do not balance in the plaintiff's favor." Id. Given the court's findings regarding other forms of assistance that are available to residents on an individual basis, we find no error in its conclusion that the income survey results do not justify an abatement benefitting all residents. See Benoit, 169 N.H. at 19-20.

The plaintiff next argues that, given the town's authority to abate taxes "for good cause shown" pursuant to RSA 76:16, I, the trial court erred in ruling that this case is one for the legislature, not the courts. However, the trial court did not rule that this case is one for the legislature; rather, the court stated that "to the extent" that the plaintiff argues that "all owner-occupied manufactured housing cooperatives should receive preferential tax treatment," the plaintiff "should present that argument to the legislature." (Emphasis added.) See In re Kilton, 156 N.H. 632, 645 (2007) (matters of public policy are reserved for the legislature); see also In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008) (interpretation of trial court order presents a question of law for this court). As discussed below, the trial court also considered the plaintiff's arguments relating to this particular manufactured housing park. Accordingly, we find no error in the trial court's ruling.

The plaintiff next argues that the trial court erred by allegedly ruling that the recorded covenant requirement in RSA 75:1-a (2012), which applies to multifamily residential rental property, also applies to manufactured housing parks. We do not construe the court's order to rule that the requirements of RSA 75:1-a apply to manufactured housing parks. See Salesky, 157 N.H. at

702. Rather, the court "assign[ed] significance to the existence of, and requirements set forth in, RSA 75:1-a," because the legislature, by enacting RSA 75:1-a, "explicitly conferred preferential tax status to multifamily residential rental property," whereas it "has not chosen to confer the same status on owner-occupied manufactured housing cooperatives." By referencing the recorded covenant requirement of RSA 75:1-a, the trial court was merely contrasting that requirement for preferential tax treatment under RSA 75:1-a with the lack of any provision of the plaintiff's bylaws ensuring that the membership consists solely of persons with low or moderate income. We find no error in the court's ruling. See In re Kilton, 156 N.H. at 645.

Finally, the plaintiff argues that the trial court erred by allegedly construing its argument to apply to all manufactured housing cooperatives, rather than to its particular case. The plaintiff asserts that "[t]he clear testimony in this case was that [the plaintiff] was a community primarily composed of low to moderate-income people." It is clear from the trial court's order that it considered the facts relating to the plaintiff's particular case. As previously noted, the court found that "a significant number of [the plaintiff's] residents did not answer the income survey." Moreover, the plaintiff's president, who opined that "a low to medium income would . . . describe the majority" of residents, acknowledged that there are "obviously" exceptions. Based upon the evidence, the court concluded that, "[t]o the extent [the plaintiff] argues that it is uniquely positioned [for an abatement benefitting all its members] based upon the income level of its residents, there is insufficient evidence in the record to support that argument." The record supports the trial court's conclusion. See Benoit, 169 N.H. at 19-20.

Affirmed.

MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

3