NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Original
No. 2022-0198

PETITION OF PAMELA SMART

Argued: February 14, 2023
Opinion Issued: March 29, 2023

Sisti Law Offices, of Chichester (Mark L. Sisti on the brief and orally), for the petitioner.

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Laura E. B. Lombardi, senior assistant attorney general, on the brief and orally), for the State.

DONOVAN, J. The petitioner, Pamela Smart, petitions this court to issue a writ of mandamus ordering the Governor and Executive Council to reconsider whether to grant a hearing on the substance of her Petition for Commutation. See Sup. Ct. R. 11. We conclude that the petitioner's challenge to the executive branch's discretionary exercise of its clemency power seeks a ruling on a political, nonjusticiable question. Accordingly, we dismiss the petition for lack of jurisdiction.

Facts

The following facts are undisputed. The petitioner is currently serving a life-without-parole sentence for her conviction as an accomplice to first degree murder. See State v. Smart, 136 N.H. 639, 643 (1993). In August 2021, counsel for the petitioner submitted a Petition for Commutation (Petition) addressed to the Governor, Executive Council, and New Hampshire Attorney General's Office. See RSA 4:21 (2020). The Petition requested a hearing before the Executive Council and for the Governor to commute her sentence. Specifically, the petitioner requested that her sentence be "modified to eliminate the 'without the possibility of parole' condition, and commuted to time served." In support, the Petition included a memorandum, as well as voluminous letters, academic degrees, and inmate progress reports.

The Governor included the Petition on the agenda for the March 23, 2022 meeting of the Governor and Executive Council. It is undisputed that the Governor and Executive Council's discussion of the Petition lasted less than two and a half minutes. Ultimately, the Governor and Executive Council voted to deny "consideration of whether the petition of Pamela Smart (age 54) requesting a commutation hearing for the offense of Accomplice to First Degree Murder should be granted." This petition for a writ of mandamus followed.

## I. Analysis

The petitioner asks this court to "issue a writ of mandamus ordering the Governor and Executive Council to re-consider [the petitioner's] request in a manner consistent with the dictates set forth in [State v. Farrow, 118 N.H. 296 (1978)]." The petitioner argues that under this court's application of Part I, Article 18 of the New Hampshire Constitution in Farrow, she has a constitutional right to "demonstrate her fitness to return to society" before the Governor and Executive Council. She complains that the Governor and Executive Council denied her that right when they acted "arbitrarily and in bad faith" when denying her Petition without due consideration of its merits. Accordingly, we construe the petitioner's argument as challenging the manner by which the executive branch exercised its discretion in declining to consider her Petition for Commutation.

As a threshold matter, the State argues that we should dismiss the petition for lack of jurisdiction because the petitioner raises a nonjusticiable political question. We agree. "Courts lack jurisdiction to decide political questions." Richard v. Speaker of the House of Representatives, 175 N.H. 262, 267 (2022); see Baines v. N.H. Senate President, 152 N.H. 124, 128 (2005) (explaining that "[i]f a question is not justiciable, it is not ours to review"). Cases that raise nonjusticiable political questions have certain characteristics, including, inter alia, "a textually demonstrable constitutional commitment of

the issue to a coordinate political department." Richard, 175 N.H. at 267-68 (quotation omitted) (enumerating six characteristics of nonjusticiable political questions).

"The nonjusticiability of a political question derives from the principle of separation of powers," as set forth in Part I, Article 37 of our State Constitution. Burt v. Speaker, N.H. House of Representatives, 173 N.H. 522, 525 (2020) (quotation omitted). "The justiciability doctrine prevents judicial violation of the separation of powers by limiting judicial review of certain matters that lie within the province of the other two branches of government." Id. (quotation omitted). "Deciding whether a matter has in any measure been committed by the Constitution to another branch of government . . . is itself a delicate exercise in constitutional interpretation, and is a responsibility of this Court as ultimate interpreter of the Constitution." Richard, 175 N.H. at 268 (quotation omitted). "Where there is such commitment, we must decline to adjudicate the matter to avoid encroaching upon the powers and functions of a coordinate political branch." Id. (quotation omitted).

Here, Part II, Article 52 of the New Hampshire Constitution provides:

The power of pardoning offenses, except such as persons may be convicted of before the senate, by impeachment of the house, shall be in the governor, by and with the advice of council: But no charter of pardon, granted by the governor, with advice of council, before conviction, shall avail the party pleading the same, notwithstanding any general or particular expressions contained therein, descriptive of the offense or offenses intended to be pardoned.

The plain language of our State Constitution demonstrably commits to "the governor, with the advice of council," the power of pardoning offenses, which includes the lesser power of commutation. N.H. CONST. pt. II, art. 52; see also Doe v. State, 114 N.H. 714, 718 (1974) (explaining that the pardon power "is an act of executive grace"). Our State Constitution recognizes "the traditional conception of clemency as an Executive Branch function separate from adjudicatory proceedings within the Judicial Branch." Bacon v. Lee, 549 S.E.2d 840, 846-47 (N.C. 2001) (collecting cases explaining the same); see N.H. CONST. pt. II, art. 52; see also Herrera v. Collins, 506 U.S. 390, 411-12 (1993) (explaining the origins of the clemency power as an executive branch function). Consequently, "pardon and commutation decisions have not traditionally been the business of courts" and "they are rarely, if ever, appropriate subjects for judicial review." Connecticut Board of Pardons v. Dumschat, 452 U.S. 458, 464 (1981).

However, "concluding that the State Constitution commits to a coordinate branch of government certain exclusive authority does not

3

necessarily end the justiciability inquiry." Richard, 175 N.H. at 268. We have recognized that when authority to determine internal procedures has been demonstrably committed to another branch of government, "the question of whether a constitutionally-mandated procedure has been followed is justiciable." Id. "When the question presented is whether or not a violation of a mandatory constitutional provision has occurred, it is not only appropriate to provide judicial intervention, we are mandated to do no less." Id. (quotation omitted).

Here, Part II, Article 52 of our State Constitution imposes no "constitutionally-mandated procedures" defining the manner by which the executive branch exercises its discretion when considering whether to invoke its clemency power. Instead, that provision limits only when the Governor, with the advice of the Executive Council, may exercise the power to pardon or commute by excluding: (1) cases of impeachment by the House of Representatives and conviction by the Senate; and (2) cases brought before conviction for a criminal offense. N.H. CONST. pt. II, art. 52. As a result, nothing in the plain language of Part II, Article 52 of our State Constitution vests this court with jurisdiction to adjudicate whether the executive branch acted, as the petitioner argues, "arbitrarily and in bad faith" in an otherwise lawful exercise of discretion in its clemency power. Cf. Richard, 175 N.H. at 268 ("However, to the extent that the constitution vests the Speaker and the Senate President, on behalf of their legislative bodies, with the discretion to take certain actions, we conclude that whether they erred in the manner in which they exercised that discretion is not justiciable.").

Moreover, we are unpersuaded by the petitioner's argument that other provisions of our State Constitution impose "constitutionally-mandated procedures" upon the Governor and Executive Council's discretionary exercise of the executive branch's clemency power. Specifically, the petitioner argues that our holding in Farrow establishes a constitutional right to have the Governor and Executive Council review and "engage in good faith discussion" about the merits of her Petition. We disagree. In Farrow, we concluded that the legislature's prescription of a life-without-parole-sentence did not constitute a sentence of extermination in violation of Part I, Article 18 of the New Hampshire Constitution. Farrow, 118 N.H. at 304-05. We observed that in addition to such a sentence not being equivalent to execution, a prisoner also "has many opportunities to improve his life" while incarcerated, which may culminate in "a pardon if he can demonstrate to the Governor and Council his fitness to return to society without being a threat to it." Id. at 305. Simply put, the petitioner's reliance upon Farrow is misplaced because nothing in our holding implied that the executive branch must apply any particular procedures when exercising its clemency powers.

The petitioner also asserts that the manner by which the executive branch exercised its discretion in this instance denied her the "minimal due

4

process" required under Part I, Articles 14 and 15 of our State Constitution. However, the petitioner's passing references to constitutional provisions without application of the text of those provisions to the executive branch's exercise of its clemency power in this case does not develop a legal argument sufficiently for our review.  See State v. Blackmer, 149 N.H. 47, 49 (2003).

Even if the petitioner had developed this argument, we conclude that, in the context of the executive branch's discretionary exercise of its clemency power, under our State Constitution the petitioner does not have a legally protected interest in obtaining a commutation hearing that would implicate procedural due process rights.  See In re Kilton, 156 N.H. 632, 637-38 (2007) (explaining that to determine whether particular procedures satisfy the requirements of due process, "we ascertain whether a legally protected interest has been implicated"); see also Dumschat, 452 U.S. at 464 (concluding that an inmate has "no constitutional or inherent right" to commutation of his life sentence (quotation omitted)).

Therefore, in the absence of any controlling "constitutionally-mandated procedures" applicable to the executive branch's exclusive authority to exercise its clemency power, we conclude that the petitioner seeks a ruling on a political, nonjusticiable question.  Because imposing procedural rules or standards upon the executive branch in the commutation process would violate the separation of powers doctrine, we dismiss the Rule 11 petition for lack of jurisdiction.

Petition dismissed.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

5